UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

PRECIOUS GIFTS ON 6th, INC.,

Debtor.

Case No. J05-01274-DMD
Chapter 11

Filed On
8/21/06

## MEMORANDUM ON DEBTOR'S OBJECTION
## TO CLAIM NO. 2 [Robert L. Merry]

A hearing on the debtor's objection to Claim No. 2, filed by Robert L. Merry, was held on July 13, 2006. David Bundy appeared on behalf of the debtor; Darryl Thompson appeared for Mr. Merry. The debtor's president, Manoj Dodani, also attended. Testimony was given by both Mr. Merry and Mr. Dodani.

I have considered Mr. Merry's claim, the debtor's objection thereto with Mr. Dodani's supporting affidavit, and the testimony given at the hearing. I have also taken judicial notice of the entire state court files in Case No. 3AN-03-14122CI, *Merry v. Precious Gifts on 6th, Inc.*, and Case No. 3AN-05-04363CI, *Merry v. Palmer,*[1] both filed in Anchorage District Court. For the reasons stated below, I conclude that the default judgment entered in the state court action does not preclude this court from determining the debtor's objection to Mr. Merry's claim on the merits. However, the court presently has insufficient evidence to adjudicate Mr. Merry's claim. A further evidentiary hearing must therefore be held before a final decision on the merits of the debtor's objection to Claim No. 2 can be issued.

---

[1]The court has taken judicial notice of this second action because Merry cited it as authority for his entitlement to recover factoring fees and charges as consequential damages. *See* Resp. to Debtor's Obj. to Claim, filed Jul. 3, 2006 [Docket No. 33], at p. 3.

Background

The debtor operates a small retail gift store in Skagway, Alaska, during the summer tourist season. It sells artwork which it acquires from several artists and vendors. In 2002 and 2003, the debtor purchased items from Robert Merry to sell in its Skagway store. A dispute arose between the parties during the 2003 season. One of the debtor's checks bounced. The debtor contends it had an agreement with Merry's factor to hold this check until there were sufficient funds in the debtor's account to cover it. Merry contests this. The debtor also says it returned a significant amount of merchandise to Merry at the end of the 2003 tourist season, for which it never received credit.

Merry wrote the debtor a letter in November, 2003, demanding a payment of $10,025.00 for the check which had bounced, plus an additional outstanding balance of $6,471.00. Merry advised that if payment wasn't received within 15 days, he would file suit for these sums, plus damages. When the debtor failed to make the requested payment, Merry filed a complaint in Anchorage District Court to recover these amounts, "plus interest and consequential damages, and for statutory penalties [for the NSF check] allowed under AS 09.68.115."

After receiving the complaint, the debtor attempted to file a *pro se* answer to the complaint. The court wouldn't accept it because corporate parties must be represented by counsel. The debtor also sent a letter to Merry which disputed the amounts he claimed were due. The debtor felt it instead owed Merry $9,713.20, after credit for merchandise

2

which the debtor intended to return to him. The debtor asked Merry to contact it so that the matter could be resolved and the correct amount paid. When Merry didn't respond, the debtor retained counsel and moved to set aside the default. That motion was granted and an answer was filed on the debtor's behalf.

The debtor's counsel subsequently moved to withdraw from the state court action because he had been unable to maintain communication with the debtor. The motion to withdraw was granted on March 14, 2005. Merry filed a motion for entry of default judgment on May 26, 2005. The motion was granted on June 21, 2005. The state court entered the judgment that had been prepared and submitted by Merry. The state court clerk's certificate of service on the default judgment reflects that it was served only on Merry and the debtor's former counsel, who had withdrawn three months earlier. The debtor was not listed on the clerk's certificate.

The default judgment was for significantly more than what the debtor believed it owed Merry. The judgment included as damages restocking fees of 30% on returned merchandise and more than $50,000.00 in interest charges and late fees Merry paid to Factors of Puget Sound, where he had been factoring his accounts receivable, including the debtor's. The debtor contends it had never agreed to pay restocking fees or factoring charges.

After the judgment was entered, Merry obtained a writ of execution and levied on the debtor's bank accounts. $5,608.00 was seized as a result; these funds are being held in the state court registry. Merry also obtained an order for a judgment debtor examination

3

and a restraining order against the debtor. The debtor filed its chapter 11 petition on September 16, 2005, and thereafter objected to the claim Merry filed in this case.

Discussion

The first issue to be resolved is whether the state court default judgment precludes this court from determining the debtor's objection to Merry's claim. Merry contends the debtor is foreclosed from litigating its claim objection because the default judgment is entitled to preclusive effect under Alaska law. I disagree.

Applicable state law determines the collateral estoppel effect of a state court default judgment in a subsequent bankruptcy proceeding.[2] In Alaska, the doctrine of collateral estoppel is applied where the following three elements are satisfied:

> 1. The plea of collateral estoppel must be asserted against a party or one in privity with a party to the first action;
>
> 2. The issue to be precluded from relitigation by operation of the doctrine must be identical to that decided in the first action;
>
> 3. The issue in the first action must have been resolved by a final judgment on the merits.[3]

---

[2] *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995).

[3] *Murray v. Feight*, 741 P.2d 1148, 1153 (Alaska 1987).

4

The Alaska Supreme Court has held that "default judgments should not be given any issue-preclusive effect, because they do not entail a full and actual litigation of the underlying factual issues."[4] The court has further stated:

> Entry of default judgment precludes a trial on the merits of an issue. Although we recognize that setting aside a final judgment may disrupt the judicial process, we have established that a trial on the merits is preferable to a default judgment.[5]

Merry cites two Alaska cases for the proposition that default judgments in Alaska are given preclusive effect. I find these cases unpersuasive, however. In *Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd.*,[6] one of the parties, Adak Aleutian, defaulted on a cross claim. However, default judgment was subsequently entered on the parties' stipulation.[7] The court found, without much discussion, that a default judgment based on a discovery violation could have preclusive effect.[8] But the real issue in that case was whether the default judgment would have preclusive effect against a "non-party" in a subsequent proceeding. The court substantively addressed the first prong of the collateral estoppel determination – privity – and reversed and remanded so the trial court could determine

---

[4]*Wall v. Stinson*, 983 P.2d 736, 740 (Alaska 1999), *citing* Restatement (Second) of Judgments § 27 cmt. e (1982) ("In the case of a judgment entered by . . . default, none of the issues is actually litigated.").

[5]*Wright v. Shorten*, 964 P.2d 441, 443-44 (Alaska 1998) (citations omitted).

[6]768 P.2d 117 (Alaska 1989).

[7]*Id.* at 119.

[8]*Id.* at 120-21.

whether the default judgment was binding on the non-party, a shareholder of one of the corporate defendants named in the default judgment.

In the second case cited by Merry, *Snyder v. Am. Legion Spenard Post No. 28*,[9] the Alaska Supreme Court affirmed the trial court's denial of a 60(b) motion to set aside a summary judgment. The summary judgment had been entered on two grounds: as a sanction for the defendant's failure to respond to discovery requests and appear for trial, and because the summary judgment motion itself was unopposed. The majority of the Alaska Supreme Court upheld this ruling on the alternative ground that the trial court could have entered a default judgment under Alaska Civil Rule 55(c)(1) for the defendant's failure to appear at trial.[10] But Chief Justice Bryner dissented, noting that procedural protections imposed by the civil rules "are necessary because, 'in the interests of justice, there must be some degree of assurance that plaintiff's claim is valid and not false or frivolous.'"[11] He felt that the entry of the summary judgment had been a mechanical act, without the trial court's independent consideration of the merits of the plaintiff's claims, and that 60(b) relief should have been granted to the defendant.[12]

*Snyder* is also distinguishable because, as noted by the majority, there had been a "well pleaded allegation" that the defendant had fraudulently taken funds in the

---

[9]119 P.3d 996 (Alaska 2005).

[10]*Id.* at 1001.

[11]*Id.* at 1004 (Bryner, C.J., dissenting), *citing Guard v. Benson*, 438 P.2d 219, 221 (Alaska 1968).

[12]*Snyder*, 119 P.3d at 1004-05 (Bryner, C.J., dissenting).

6

approximate sum of $114,000.00 from the plaintiff.[13] Additionally, the plaintiff's complaint contained an attachment which itemized, by date and number, the 144 checks that the defendant had allegedly fraudulently written to himself. The checks totaled $111,522.51. A summary judgment was entered for the same amount, plus interest, costs and attorney's fees. In contrast, Merry's state court complaint against the debtor alleged damages of roughly $16,000.00, without any supporting documentation. Merry acquired a default judgment of more than $80,000.00. The documents Merry submitted in support of the default judgment don't support elements of the damages he was awarded. None of the credit invoices he attached to the affidavit in support of his motion for default judgment reflected the 30% restocking fee he claimed he was owed. Nor was there any documentation to support his contention that the debtor had notice of, or had agreed to be liable for, the fees and late charges assessed by the factor.[14] The court entered the judgment which Merry submitted; there is nothing to indicate that its entry was more than a mechanical act.

Merry contends there is state court authority from another action, *Merry v. Palmer*, Anchorage District Court Case No. 3AN-05-04363 CI, to support the damages he has claimed for factoring arrangements and restocking fees, but there are significant differences between that case and the one involving the debtor. First, in *Palmer*, Merry's

---

[13]*Id.* at 1003.

[14]The documents submitted in support of Merry's motion for default judgment included a letter dated March 18, 2002, which advised that Merry had irrevocably assigned "a portion of our Accounts Receivable" to Factors of Puget Sound, and asked that the debtor make all payments due Merry directly to the factor until further notice. But the letter didn't disclose the factor's fees and charges. Nor was there anything in the letter which indicated that Merry would hold the debtor liable for any of the factor's fees.

complaint, in paragraph 6, specifically alleged the existence of the factoring arrangement and claimed the interest and late fees he had paid to the factor as *special damages*.[15] Additionally, the clerk's log notes from trial in that case reflect that Merry introduced a contract for open account privileges and an acknowledgment and acceptance of assignment of accounts to his factor. Both documents had apparently been executed by the defendants. Merry's action against the Palmers was fully litigated, as the case proceeded to a bench trial in which all parties participated. The court issued a written decision, awarding the factoring fees as incidental damages under AS 45.02.710.

Conclusion

The issue of damages in *Palmer* was actually litigated. But none of the issues were actually litigated with regard to the default judgment entered against the debtor.[16] There are no "well pleaded" allegations that the debtor would be liable for upwards of $80,000.00, or for factoring or restocking fees. Nor does the state court file contain documentary evidence to support the assessment of these fees as damages against the debtor. I conclude the default judgment has no collateral estoppel effect with regard to the debtor's objection to Merry's claim. However, because there is insufficient documentary evidence before this court at present, it is impossible to adjudicate Mr. Merry's claim. A further evidentiary

---

[15] Ak. Civil Rule 9(h) requires special damages to be specifically stated in a complaint.

[16] *Wall v. Stinson*, 983 P.2d at 740.

hearing will be scheduled on the debtor's objection to Claim No. 2.  An order will be entered consistent with this memorandum.

DATED: August 21, 2006

BY THE COURT

 /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:  David Bundy, Esq. (for debtor)
Darryl Thompson, Esq. (for Merry)
U. S. Trustee

8/21/06